**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR D. SEALE,<br><br>      Petitioner,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | Civil Action No. 19-21016 (MAS)<br><br>**OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on Petitioner Arthur D. Seale's motion to vacate sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1, 12.) Following an order to answer, the Government filed a response to the motion (ECF No. 13), to which Petitioner replied (ECF No. 16). For the following reasons, the Court grants the motion solely to the extent Petitioner seeks the vacation of his § 924(c) conviction and sentence. In addition, the Court denies Petitioner's request for a full resentencing.

**I.  BACKGROUND**

  On direct appeal, the Third Circuit summarized the background of Petitioner's conviction as follows:

> In late 1991, [Petitioner], a former security officer for Exxon Corporation[,] conceived a plan to kidnap an Exxon executive. His goal was to obtain a large sum of money to assist with his and his wife's financial problems. He selected Sydney J. Reso [("Reso")], president of an Exxon subsidiary, as the target of an elaborate scheme in which [Petitioner's wife] agreed to participate.

For the next three months, [Petitioner and his wife] prepared to carry out their crime. They conducted surveillance at Reso's home to ascertain the time he usually left for work and the method of transportation he usually used. They constructed a coffin-like box in which to place Reso once they had abducted him. [Petitioner] began conducting research on how to avoid paying taxes on the ransom he expected to receive and on environmental causes he might use as a ploy to explain the kidnapping in ransom notes.

On the morning of April 29, 1992, [Petitioner and his wife] abducted Reso as he left for work. During a struggle at the foot of his driveway as [Petitioner and his wife] sought to place him in their van, Reso was shot. He died four days later. For the next six weeks, however, [Petitioner and his wife], holding themselves out as an environmental group named the "Fernando Pereira Brigade, Warriors of the Rainbow," pursued their efforts to obtain $18.5 million in ransom by leading Federal Bureau of Investigation officials, the Reso family, other Exxon employees and the general public to believe that Reso was still alive but would be "eliminated" if their instructions were not followed.

On June 19, 1992, before any ransom money was paid, [Petitioner and his wife] were arrested and charged with federal and state kidnapping and extortion charges. [Petitioner's wife] soon began to cooperate with authorities. She led them to Reso's grave and described the scheme to them. Pursuant to a plea agreement, she pleaded guilty to one count of extortion and one count of conspiracy to extort, each in violation of 18 U.S.C. § 1951. [Petitioner] did not enter into a plea agreement with the government; instead, he pleaded guilty to a seven-count indictment two days before his trial was to start. [Those seven counts included charges of conspiracy to commit Hobbs Act extortion in violation of 18 U.S.C. § 1951, Hobbs Act extortion and committing and threatening violence to Reso in furtherance of that extortion in violation of 18 U.S.C. § 19151, the knowing and willful carrying and use of a firearm in relation to the Hobbs Act counts in violation of 18 U.S.C. § 924(c), the mailing of a threat to kill or injure Reso in violation of 18 U.S.C. § 876, making a threatening phone call in violation of 18 U.S.C. § 875(a) and (b), and two counts of traveling in interstate commerce to facilitate the extortion scheme in violation of 18 U.S.C. § 1952.]

Both [defendants] received stiff sentences. [Petitioner] was sentenced to 95 years in prison and a five-year term of supervised release[, including statutory maximum sentences on the six counts relating to extortion and a five year consecutive sentence on the § 924(c) violation.] . . . [Petitioner] also pleaded guilty to and

2

> received sentences for state charges arising from [his] criminal activity.

*United States v. Seale*, 20 F.3d 1279, 1281-82 (3d Cir. 1994). Petitioner appealed, and the Third Circuit affirmed his conviction and sentence but remanded the matter for a redetermination of the applicable fees and fines. *Id.* at 1290.

Petitioner later sought to challenge his convictions through a number of unsuccessful motions to vacate sentence. (*See* Docket Nos. 04-3830, 07-4356, 18-9075.) Petitioner thereafter sought, and received, leave from the Court of Appeals to pursue a successive motion to vacate sentence challenging his conviction under § 924(c) following the Supreme Court's decision vacating the residual clause of § 924(c) in *United States v. Davis*, --- U.S. ---, 139 S. Ct. 2319 (2019). (*See* ECF No. 1.)

## II.  **LEGAL STANDARD**

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert.*

*denied*, 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### III. DISCUSSION

#### A. No Evidentiary Hearing Is Necessary In This Matter

A district court need not hold an evidentary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. Because this Court can resolve Petitioner's *Davis* claim on the record presented for the reasons expressed below, no evidentiary hearing is necessary in this matter.

#### B. Petitioner's *Davis* claim

In his motion, Petitioner argues that his § 924(c) conviction must be vacated because his convictions for Hobbs Act extortion and conspiracy to commit Hobbs Act extortion no longer function as viable predicates for such a conviction in light of the Supreme Court's ruling in *Davis*. Section 924(c) criminalizes the use, carrying or possession of a firearm in furtherance of a drug trafficking crime or crime of violence. The statute provides for higher mandatory minimum sentences in those cases in which the firearm in question is either brandished or discharged. 18 U.S.C. § 924(c)(1)(A)(ii)-(iii). As explained by the Supreme Court in *Davis*, under the statute, a crime will qualify as a crime of violence only when it satisfies one of two alternative clauses—the

statute's elements clause, § 924(c)(3)(A), or the statute's residual clause, § 924(c)(3)(B). *Davis*, 139 S. Ct. at 2324. In *Davis*, the Supreme Court invalidated the residual clause of § 924(c) as unconstitutionally vague, but left in place the statute's remaining elements clause. *Id.* at 2325-33. Thus, after *Davis*, a crime will only qualify as an underlying crime of violence for a § 924(c) charge where it meets the elements clause of § 924(c). *Id.* Under the elements clause, a crime constitutes a valid "crime of violence" where the "offense is a felony" and it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* at 2324. Thus, as all of the acts which would support Petitioner's § 924(c) conviction are clearly felonies, if any of the charged offenses categorically has as an element the use, attempted use, or threatened use of force, it will remain a valid predicate offense for Petitioner's § 924(c) convictions.

Here, the Government concedes that neither Hobbs Act extortion itself nor conspiracy to commit such an extortion qualifies as a crime of violence under the elements clause. As the Government points out, however, Petitioner was not merely charged with extortion and conspiracy to commit extortion. He was also charged with and pled guilty to the crime of committing and threatening violence against his victim in furtherance of his extortion plot. The Hobbs Act criminalizes three distinct offenses, as well as the attempt or conspiracy to engage in those offenses—robbery, extortion, and the "commit[ting] or threaten[ing of] physical violence to any person or property in furtherance of a plan or purpose" to rob or extort. *See* 18 U.S.C. § 1951(a); *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 22-23 (2006); *United States v. Nikolla*, 950 F.3d 51, 54 (2d Cir. 2020). As the Second Circuit recently noted, the "elements of [the use or threatening of force in furtherance of a crime of violence] mirror almost exactly the definition of a "crime of violence" in the elements clause of § 924(c)." *Nikolla*, 950 F.3d at 54. In *Nikolla*, as in this case, the petitioner argued that the Hobbs Act violence in furtherance of extortion offense

did not fit under the elements clause, however, because a defendant could threaten or use force upon himself or his own property in furtherance of an extortion plot, acts which would be outside of the elements clause of § 924(c). *Id.* The Second Circuit rejected this argument as an unrealistic hypothetical as the petitioner did "not cite to any case that applied the Hobbs Act in this way, and [the Court of Appeals was] aware of none." *Id.*; *see also Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (categorical analysis is "not an invitation to apply 'legal imagination' to the . . . offense; there must be a realistic probability" the statute would be applied in the argued manner); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193-94 (2007) (a petitioner must show a "realistic probability, not a theoretical possibility" that statute would be applied in the manner for which he is arguing, which generally requires that a petitioner present instances in which the statute was applied in such a manner).

Petitioner argues that he need not show such a realistic probability under the Third Circuit's ruling in *Salmoran v. Attorney General*, 909 F.3d 73, 81-82 (3d Cir. 2018). In *Salmoran*, the Third Circuit explained that the realistic probability rule should not be applied where the text of the criminal statute in question *clearly* encompasses a broader range of activity than that entertained by the generic federal definition to which it must categorically match. *Id.* Here, there is a difference between the two statutes: the elements clause requires the threat or use of violence against the person or property of another, while the Hobbs Act crime in question requires only the threat or use of violence against "any person or property" in furtherance of a robbery or extortion plot. As Petitioner points out, the Hobbs Act could be plausibly read to criminalize the use or threat of violence against oneself or one's own property, which lays outside of the boundaries of the conduct recognized by the elements clause of § 924(c). This Court is thus constrained by the Third Circuit's ruling in *Salmoran* to eschew the realistic probability approach used by the Second Circuit, and must find that the Hobbs Act offense of use of violence in furtherance of an extortion

plot is not categorically a crime of violence under the elements clause sufficient to support Petitioner's conviction under § 924(c).

Recognizing this possibility, the Government contends that even if the Hobbs Act offense to which Petitioner pled guilty does not support his § 924(c) conviction, his conviction may yet stand because Petitioner admitted during his guilty plea to conduct including the taking of the victim's credit card, an act which the Government asserts constitutes Hobbs Act robbery, which *is* categorically a crime of violence under the elements clause. *See, e.g., United States v. Walker*, 990 F.3d 316, 325-26, 325 n.11 (3d Cir. 2021) (holding that completed Hobbs Act robbery is a crime of violence and noting virtually unanimous agreement of courts of appeals on the issue), *vacated and remanded on other grounds*, 2022 WL 2295075 (2022); *see also United States v. Atcheson*, 94 F.3d 1237, 1243-44 (9th Cir. 1996) (theft of bank cards issued by out of state bank by force or threat of force constitutes Hobbs Act robbery). "It is well settled that, '[i]n a prosecution under [§ 924(c)], the Government must prove [or the defendant admit] that the defendant committed a qualifying predicate offense . . . but it is not necessary that the defendant be separately charged with or convicted of such an offense." *United States v. Collazo*, 856 F. App'x 380, 383-84 (3d Cir. 2021) (quoting *United States v. Lake*, 150 F.3d 269, 274-75 (3d Cir. 1998)). "In the context of a § 924(c) guilty plea, [courts] look[] to the factual proffer, plea hearing, and other evidence in the record to determine if a qualifying predicate offense was committed." *Id.* at 384.

The Government contends that in his plea proffer, Petitioner admitted to committing Hobbs Act robbery, a crime for which he was not charged. The Court is not persuaded by the Government's argument. "[T]he elements of Hobbs Act robbery are (1) the unlawful taking or obtaining (2) of personal property (3) from the person of another (4) against his or her will (5) by means of actual or . . threatened force, or . . . by means of violence, or . . . by means of fear of

7

injury." *United States v. Taylor*, --- U.S. ---, 142 S. Ct. 2015, 2034 (2022) (Alito, J., dissenting); *see also* 18 U.S.C. § 1915(b)(1); *United States v. Hill*, 890 F.3d 51, 56-57 (2d Cir. 2018).

During his plea proffer, Petitioner admitted that he and his wife seized the victim at gun point and placed him in a van, the victim was shot in the exchange, and they took him to a storage unit. (Plea Tr. at 20-21.) Petitioner further admitted that as part of the extortion plot, he and his wife drafted ransom notes, to one of which they attached the victim's credit card. (*Id.* at 22-25.) Based on Petitioner's plea proffer, the Court finds it implausible that Petitioner stole the victim's credit card before he accidentally shot the victim while trying to kidnap the victim. Moreover, even if the Court found that the facts *suggested* a plausible theory that Petitioner or his wife took the credit card from Reso while he was still alive, Petitioner did not elaborate on the details of how, or when, the credit card was taken, or by whom. Petitioner did not expressly admit that the card was taken from the person of his victim; that the card was taken by actual or threatened force, violence, or by means of fear or injury; or that he was the one who retrieved the card. If the Court adopted the Government's argument, it would be required to *infer* from Petitioner's plea colloquy that the card was taken by means of threats or force imposed on the victim. Petitioner, however, did not expressly admit all of the elements of Hobbs Act robbery on the record during his plea colloquy. As the indictment in turn makes no mention of such a robbery, and there was no trial at which all of the elements of Hobbs Act robbery were established, this Court cannot find that Petitioner admitted to Hobbs Act robbery for that to serve as the predicate offense for his § 924(c) conviction. As Petitioner therefore lacks an adequate crime of violence to support his conviction, his § 924(c) conviction must be vacated absent some procedural bar to such a result.

The Government argues that such a bar does exist—specifically, the Government argues that Petitioner's *Davis* claim is procedurally defaulted as it could have been raised on direct appeal or in prior § 2255 motions to the extent that the void for vagueness doctrine existed long before

his conviction, even if such a claim challenging § 924(c) was unlikely to succeed thirty years ago. Generally, claims which could have been, but were not raised, either on direct appeal or in a first § 2255 motion, will be considered procedurally defaulted in a subsequent proceeding. *See, e.g., Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *see also United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993); *Parkin v. United States*, 565 F. App'x 149, 151-52 (3d Cir. 2014). Clearly, Petitioner *could* have raised a vagueness challenge in earlier proceedings, and the Government thus may be correct that the claim in question is technically defaulted.

Even so, however, a habeas petitioner can overcome a procedural default by showing cause for his default and actual prejudice. *Massaro*, 538 U.S. at 504; *Frady*, 456 U.S. at 167-68; *Parkin*, 565 F. App'x at 151. Cause in this context is established where "some objective factor external to the defense" impeded the petitioner's ability to earlier raise the claim. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Actual prejudice will in turn be established where the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. Since *Davis*, "many courts have noted [that] a petitioner [can] adequately establish[] cause in this circumstance because *Davis* . . . was decided well after a petitioner's judgment of conviction became final" and a *Davis* claim was not reasonably available at the time. *See, e.g., Hinnant v. United States*, No. 19-19028, 2020 WL 6255415, at *3 (D.N.J. Oct. 23, 2020). In an unpublished case, the Third Circuit has likewise questioned the wisdom of applying procedural bars to *Davis* claims, categorizing *Davis* as a new rule of constitutional law for § 2255 purposes—that the residual clause of § 924(c) is unconstitutionally vague. *See Collazo*, 856 F. App'x 382-83. It thus appears that the Third Circuit would likewise determine that a claim raised in a timely fashion after the Court's ruling in *Davis* either would not be barred because it is based on a new rule which was not previously available,

or at least that the lack of *Davis* as a practical matter would be cause to excuse procedural default. *Id.* This Court agrees that *Davis* was not practically or reasonably available to Petitioner, and that this is sufficient to establish cause to excuse his default. Likewise, that the alleged error worked to his disadvantage is clear—he sustained a § 924(c) conviction without a valid predicate offense not based on an unconstitutionally vague clause. Petitioner has thus shown cause and actual prejudice, and his apparent procedural default thus does not bar relief.

Finally, the Court must turn to the question of relief. Petitioner argues that, in light of the vacation of his § 924(c) conviction, he should receive an entirely new sentencing on *all* of his offenses under the sentencing package doctrine. District courts have "broad and flexible power" in determining the proper course "following a successful § 2255 motion" which results in the vacation of one count of a petitioner's conviction. *United States v. Davis*, 112 F.3d 118, 121 (3d Cir. 1997). Under the sentencing package doctrine, where a petitioner has been "found guilty on a multicount indictment" and "one or more of the component counts is vacated" a district judge is "free" to resentence the petitioner on all the remaining counts if such an action is necessary to "accurately reflect the [sentencing] judge's original intent regarding the appropriate punishment for a defendant convicted of multiple offenses and to reflect the gravity of the crime." *Id.* at 122-23. The thrust of the doctrine, then, is that, in the face of a vacated conviction, a court *may* resentence a petitioner on all counts where the sentence on the vacated count was interdependent with the sentence on the remaining counts and such a resentencing is necessary to reflect the sentencing judge's ultimate plan and to take account for the seriousness of the remaining offenses, whose sentences may have been discounted to account for the now vacated count of the conviction. *Id.* at 123. The ultimate purpose of the doctrine, then, is to permit a court to resentence the defendant with any guidelines enhancements which the court was prevented from applying by the now vacated conviction or to permit the court to increase the sentence on the remaining counts

10

where necessary to effect the total sentencing package intended by the sentencing judge. *See United States v. Smith*, 467 F.3d 785, 789-90 (D.C. Cir. 2006). A full resentencing under the doctrine is therefore inappropriate where the sentencing judge already imposed "the highest sentence available" on the remaining counts of the conviction, indicating that the vacatur of a consecutive § 924(c) conviction does not unravel the package imposed. *Id.* at 790.

This Court need not guess at Judge Brown's intentions in sentencing Petitioner. At the sentencing hearing, Judge Brown made it abundantly clear that his "intent [wa]s that [Petitioner] never be free" and that the Court intended to impose a sentence that ensured that Petitioner would be "imprisoned for the rest of [his] life without parole." (Sent. Tr. at 91.) Judge Brown therefore imposed the applicable statutory maximum sentence on each count of the indictment and ran those counts consecutive to one another. (*Id.* at 91-92.) As with the defendant in *Smith*, Petitioner received on his remaining convictions "the highest sentence available" in the form of the applicable statutory maximum sentences run consecutively, and as such the vacatur of the § 924(c) sentence alone does not "unravel" an interdependent sentencing plan. As the applicable maximums were imposed, this Court has no opportunity to impose a harsher sentence on the remaining counts in order to rebalance Petitioner's sentence, and the increased guidelines range which would result from the inapplicability of § 924(c) could have no effect on Petitioner. The only possible outcome of a full resentencing for Petitioner would be either the sentence Petitioner already has minus the five years for the vacated count, or a windfall in the form of a lesser sentence on Petitioner's remaining counts. Such a windfall would not "accurately reflect" Judge Brown's sentencing intentions, nor would it allow the restoration of a package plan disturbed by a vacated count. The sentencing package doctrine is thus inapplicable—Petitioner's statutory maximum sentences were not interdependent with the consecutive § 924(c) conviction, and there is no occasion in this matter to rebalance Petitioner's remaining sentences to better reflect the sentencing court's intentions.

This Court thus concludes that a full resentencing is inappropriate and Petitioner's request must be denied as such. This Court will therefore grant Petitioner's motion to the extent he seeks the vacation of his § 924(c) conviction, vacate the five-year consecutive sentence imposed on that count, and leave Petitioner's remaining sentences intact.

IV. **CONCLUSION**

For the reasons set forth above, Petitioner's motion to vacate sentence (ECF No. 1) is **GRANTED** only to the extent he seeks the vacation of his § 924(c) conviction and sentence. Petitioner's request for a full resentencing is **DENIED**. An appropriate order follows.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**